IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| United States of America | : | |
| | : | Case No. CR-1-03-155 |
| | : | |
| | : | District Judge Susan J. Dlott |
| v. | : | |
| | : | ORDER GRANTING |
| Miles Zander | : | DEFENDANT'S MOTION TO |
| | : | SUPPRESS |
| Defendant | : | |

This matter comes before the Court on Defendant Miles Zander's Motion to Suppress (doc. # 10). The Court held a hearing on the motion on March 29, 2005 and a continuation of the hearing on May 26, 2005. For the reasons that follow, the Court **GRANTS** Defendant's Motion to Suppress (doc. # 10).

**I.   FACTUAL BACKGROUND**

The testimony at the first hearing was as follows: On March 16, 2003, at 2:30 a.m., Cincinnati Police Department ("CPD") officers Gardner and Stromberg were in uniform and on patrol in the area of Hewitt and Hackberry Avenues. Officer Gardner observed a man standing alone on the street corner. Officer Gardner testified that he saw a gold/tan Toyota Camry pulled over at the curb and the man on the curb crossed the street to the Toyota. Officer Stromberg testified that he could not observe this exchange from his vantage point. After a short period of time, the Toyota pulled away from the curb and the officers followed it. The officers initially testified that while they were following the Toyota, it ran a stop sign (although the officers later admitted they were

mistaken, as explained below). The officers testified that their cruiser did not have a radar device, so they used the pacing method to determine that Zander was speeding. Despite Zander's alleged speeding, however, the officers never turned on their flashing lights or their siren.

The Toyota stopped on its own in front of 1842 Kinney. As the officers pulled up behind the Toyota, Defendant Zander was stepping out of the car. Officer Gardner got out of the cruiser, and yelled for Zander to come back. Zander came back, and Officer Gardner asked him what he was doing and asked for his driver's license. Zander said he did not have a driver's license. Officer Gardner advised Zander he was under arrest for driving without a license, patted Zander down, and placed him in the cruiser. Next, Officer Gardner approached the Toyota and saw in plain view a baggie containing white powder sitting on the floor of the driver's side of the car. Officer Gardner then signaled to Officer Stromberg to handuff Zander, which Stromberg did. Then Officer Stromberg read Zander his Miranda rights. Officer Gardner testified that he also observed a white plastic bag on the passenger's seat. In the bag, Officer Gardner found a loaded .32 caliber revolver. During the course of the searches, the officers repeatedly asked Zander if there was anything in the car that should not be. Zander replied each time that it was not his car. Officer Stromberg wrote a ticket citing Zander for running a stop sign, speeding, and driving without a license. (See Def. Ex. 3.)

The testimony given and evidence admitted at the first hearing revealed several inconsistencies in both the officers' recording and recollection of Zander's arrest. First, Officer Gardner testified that the gun he found in Zander's car was misidentified in the arrest report and the firearm test log as a .32 caliber Smith and Wesson; Officer Gardner recorded the gun as a .32 caliber Gerstenberger and Eberwein on the firearm report (see Govt. Ex. 2), and at the hearing, he identified

such a gun as the one found in Zander's car (see Govt. Ex. 5). Second, the arrest report recorded that Zander ran two stop signs (see Govt. Ex. 1), as did the trial preparation report (see Def. Ex. 2.). At the hearing, however, each officer testified on direct examination that Zander had run only one stop sign, at the corner of Wold and Kinney. Moreover, during cross-examination of each officer, Zander's counsel played a videotape that he had taken on the day of the hearing. (See Def. Ex. 1.) The tape showed a car following the route that the officers testified Zander took, and they followed, on the night of Zander's arrest. The tape revealed that there were no stop signs on that route, at least as of the day of the hearing, when the tape was made. After viewing the tape, each officer then admitted that he was mistaken about Zander running a stop sign.

At the close of the first hearing, Zander's counsel asked for permission to present an affidavit from someone employed by the City regarding whether there was a stop sign at Wold and Kinney at the time of Zander's arrest. The Court granted Zander's counsel's request to submit an affidavit.

On April 22, 2005, Zander's counsel submitted the Affidavit of Kara P. Killen in Support of Defendant's Motion to Suppress (doc. # 19). Kara Killen is an investigator for the Federal Public Defenders Office. Her affidavit had two attachments, Ex. A, which is a letter to Kara Killen from Jon Childress, the Supervising Engineer at the City Department of Transportation and Engineering, and Ex. B., which is an excerpt of the Cincinnati Police Procedure Manual regarding the pacing technique. Killen attested that she had investigated whether there had ever been a stop sign at the corner of Wold and Kinney, and there was no evidence that a stop sign was installed at Wold and Kinney during the last 40 years. She also attested that her review of the excerpt of the CPD Procedure Manual reveals particular requirements for the pacing method. The Government conceded in its Response of the United States to the Affidavit of Kara Killen in Support of

Defendant's Motion to Suppress (doc. # 21) that there was not a stop sign on the corner of Wold and Kinney on the date of Zander's arrest.

At the continuation of the hearing, Zander's counsel called two witnesses. First he called Lieutenant Hungler, the head of the CPD traffic unit, to testify regarding pacing. Lieutenant Hungler testified that the CPD Procedure Manual contained only guidelines, not requirements, and that such would apply to the section on pacing as well.[1] Next, Zander's counsel called Kara Killen to testify about her investigation. Ms. Killen identified the letter she received from Jon Childress, which states that there is no stop sign on Wold Avenue at Kinney Avenue, and that there is no record of a stop sign being installed there during the last forty years. The letter was admitted as Defense Exhibit 5.

## II. ANALYSIS

Zander seeks to suppress the introduction of the gun (see doc. # 10 at 1.) Zander claims that his stop and arrest violated the Fourth Amendment because: 1) it is undisputed that the officers had no warrant; and 2) the officers did not have reasonable suspicion or probable cause to stop or search Zander. Specifically, Defendant argues that there was no reasonable suspicion or probable cause to stop Zander. The Government argues that the stop, search, and arrest of Zander were all lawful because the officers observed Zander running a stop sign and speeding, which gave the officers

---

[1] On June 15, 2005, Zander's counsel submitted the Second Affidavit of Kara P. Killen In Support of Defendant's Motion to Suppress (doc. # 22). That Affidavit attaches another excerpt from the CPD Procedure Manual. Ms. Killen attests that "[a] review of [the manual] establishes that the [manual] is 'considered binding upon all personnel' and considered a Department Binding Directive." It appears that Zander submitted this affidavit in support of his argument that the police were required to follow the procedure for pacing that is provided in the manual. The Court declines to interpret the nature and effect of the CPD Procedure Manual because of its finding, infra, that regardless of whether the officers did or were required to follow the procedure, their testimony that Zander was speeding is not credible under the circumstances.

probable cause to stop Zander, and because Zander was driving without a license, which gave the officers probable cause to arrest him.[2]

If indeed Zander committed a traffic violation, the officers would have had probable cause to stop him. See United States v. Burton, 334 F.3d 514, 516 (6th Cir. 2003) (officer has probable cause to conduct a traffic stop when he has reason to believe a traffic violation has occurred). Once Zander was stopped, and the officers discovered he was driving without a license, the officers would have had probable cause to arrest him and search him and his car. Thus, the preliminary question is whether the officers had a valid basis for stopping Zander.

The officers acknowledged at the first hearing on the motion to suppress that they were mistaken in testifying that Zander had run a stop sign, and the Government has conceded that there was no stop sign on the route that Zander could have run. Thus, the officers did not have probable cause to stop Zander for running a stop sign. The Government argues that Zander nevertheless could be stopped because the officers observed him speeding. The officers' cruiser did not have radar equipment, so the only evidence that Zander was speeding is the officers' testimony that they paced him and he was speeding. Zander's counsel has challenged both the accuracy of the pacing method itself and the officers' implementation of that method, arguing that the officers failed to comply with CPD procedure. The Court finds that regardless of whether the officers properly paced Zander, the officers' testimony that Zander was speeding is not credible in light of their numerous inconsistent and incorrect recordings and recollections about the gun and the stop signs. Thus, the Court finds that the officers did not have probable cause to stop Zander on that basis, either.

---

[2] However, Officer Stromberg testified that these are not usually offenses for which one is arrested. He testified further that he thought that after he wrote Zander a ticket, he would then let Zander go.

The Government argued at the second hearing that even if the officers did not have probable cause to stop Zander for running a stop sign or for speeding, his stop was nevertheless a valid Terry stop. The Government argues that the stop of Zander was not a traffic stop, but rather a stop of a person, because: 1) the officers never turned on their lights or made any other show of force; and 2) Zander stopped his car himself and had already exited the car when the police pulled up behind him. The Government argues further that the officers had reasonable suspicion to conduct a Terry stop because Zander's behavior caused the officers to think that Zander may have been involved in drug trafficking.

This Court is not inclined to accept the Government's post hoc justification for Zander's stop. See U.S. v. Gilliam, 275 F. Supp. 2d 797, 804-06 (W.D. Ky 2003) (rejecting post hoc justification for a traffic stop and granting motion to suppress evidence where officer's stated reason for the stop was proved invalid and officer's testimony was not credible). Moreover, regardless of whether a post hoc explanation can justify an otherwise unlawful stop, the Court finds that the officers did not have reasonable suspicion to conduct a Terry stop. Without the alleged traffic violations, the only evidence that the officers had to arouse suspicion of drug activity was that Officer Gardner observed Zander stop his car late at night and appear to exchange conversation with a man who had been standing on the corner – an occurrence that Officer Stromberg could not even see to consider whether it was suspicious. Officer Gardner testified that his observation of the circumstances involving Zander and the person at the corner suggested the possibility of criminal activity. He also testified, however, that such observation did not give the officers enough

information to stop Zander.[3] The Court finds that these circumstances, particularly in light of the credibility issues, did not give the officers reasonable suspicion to conduct a Terry stop.

Because the officers had neither probable cause nor reasonable suspicion to stop Zander, his stop, search, and arrest were all improper. The gun discovered pursuant to the illegal search of his car is thus inadmissible fruit of the poisonous tree. The Court therefore **GRANTS** Defendant's Motion to Suppress (doc. # 10).

### III. CONCLUSION

As the officers had no arrest warrant and no probable cause or reasonable suspicion to stop Zander, his stop, search, and arrest violated his Fourth Amendment rights. The gun discovered pursuant to that unconstitutional stop and search is therefore inadmissible and Defendant's Motion to Suppress (doc. # 10) is **GRANTED**.

IT IS SO ORDERED.

    s/Susan J. Dlott
Susan J. Dlott
United States District Judge

---

See March 29, 2005 Hearing Transcript, pp. 28-29.